The proceeds of the sale of the stock are claimed by the plaintiff upon the ground that the transfer to the bank was void because the deeds or bonds of September, 1839, and January, 1841, were not proved and registered agreeably to the provisions of the act of Assembly. Rev. Stat., ch. 37, secs. 23, 24.
I agree with my brother Daniel, that the deeds or bonds under (321) which the defendants claim the proceeds of the stock are valid at common law, and need not be registered to give them effect. I cannot see that the transaction came within the meaning of the act referred to, and certainly not within its words. The transfer of the stock by Alexander to the bank was neither a mortgage nor a deed, or conveyance in trust, but was simply what it purported to be, a pledge of the stock. The difference between a mortgage and a pledge, strictly as such, is well known and recognized by the most approved writers. The passages from Story's Equity, referred to in Judge Daniel's opinion, fully prove it. A mortgage conveys the entire property in the thing mortgaged conditionally, so that, when the condition is broken, the property, at law, remains absolutely in the mortgagee; but a pledge never conveys the general, but only a special property, to the bailee; and the effect of a failure on the part of the pawner to pay the money for which it is pledged is not to convey the entire property in the thing to the bailee, but to give him a power to dispose of it and pay himself. If he does not do so, but retains the property, the pawner at any time has a right to redeem it. If the debt is paid or the money tendered by the pawner, it is the duty of the bailee to return the thing pawned, and, if he does not, an action at law lies against him, as the whole property is revested thereby in the pawner. Jones on Bail, 91. So, also, it is essential to a pledge that the possession of the article should accompany it. My opinion, however, is not, in this case, formed so much upon the difference between a mortgage and a pledge as upon the nature of the property here put in pawn, namely, the certificate of stock — a mode of securing *Page 234 
debts to the bank, known to the Legislature and sanctioned by them. In the act chartering the Bank of Cape Fear, 2 Rev. Stat., sec. 8, p. 40, in pointing out in what things the corporation shall be permitted to deal, the act enumerates, "or in the sale of goods really and truly (322) pledged for money lent and not redeemed in due time." This act was passed in 1804. The charter of the Merchants Bank of New Bern was granted in 1834, 2 Rev. Stat., p. 69. In section 5, among the fundamental articles of the corporation, it is provided: "In all cases, in addition to the usual personal security, the stock of directors shall be considered as a pledge for the repayment of the money they may borrow, either as principal or security." And there is the same restriction as to the subjects in which they shall deal, as in the charter of the Cape Fear Bank, expressly including articles pledged. The acts concerning mortgages, to which reference has been made, were passed in 1820. Both before and after the passage of these acts the Legislature recognized the right of the banks to receive in pawn or pledge its own stock as collateral security for money loaned; it is to be received not in mortgage, or in trust, properly speaking, but in pledge, and subject, of course, to the laws regulating pawns. Nor can any evil possibly result, from such an arrangement, to any creditor of the pawner, for the certificate of stock must in every instance accompany the transfer to make it effectual. I cannot, therefore, persuade myself that the Legislature intended to embrace within its provisions upon the subject of mortgages and deeds of trust such a transaction as this.
I concur with my brother Daniel in affirming the judgment.